1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11
12   CLARENCE ZIMMERMAN,              )   Case No. CV 13-8597-RGK (KK)
                                      )
13                    Petitioner,     )   FINAL REPORT AND
                                      )   RECOMMENDATION OF UNITED
14              v.                    )   STATES MAGISTRATE JUDGE
                                      )
15   FREDERICK FOULK, Warden,         )
                                      )
16                    Respondent.     )
                                      )
17   ─────────────────────────────────)
18
19        This Final Report and Recommendation is submitted to the Honorable R. Gary
20   Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and
21   General Order 05-07 of the United States District Court for the Central District of
22   California.
23                                   **I.**
24                    **SUMMARY OF RECOMMENDATION**
25        Clarence Zimmerman ("Petitioner"), a California state prisoner proceeding pro se,
26   has filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §
27   2254 challenging his convictions for attempted murder and possession of a firearm by a
28   felon.  Petitioner alleges various constitutional violations, including ineffective assistance

of counsel, insufficient evidence, improper admission of evidence, a discovery violation, violation of right to present a defense, and cumulative error.  For the reasons that follow, the First Amended Petition should be denied in its entirety.

## II.

## PROCEDURAL HISTORY

On March 30, 2011, following a jury trial in the Superior Court of California, County of Los Angeles, Petitioner was convicted of one count of attempted murder in violation of Cal. Penal Code §§ 187(a) and 664, and one count of possession of a firearm by a felon in violation of Cal. Penal Code § 12021(a)(1).  The jury also found true allegations the attempted murder was willful, deliberate, and premeditated within the meaning of Cal. Penal Code § 664(a); Petitioner personally used a firearm during the attempted murder within the meaning of Cal. Penal Code § 12022.53(b); Petitioner personally and intentionally discharged a firearm during the attempted murder within the meaning of Cal. Penal Code § 12022.53(c); and Petitioner personally and intentionally discharged a handgun during the attempted murder causing great bodily injury within the meaning of Cal. Penal Code § 12022.53(d).  The jury further found Petitioner committed the attempted murder for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members within the meaning of Cal. Penal Code § 186.22(b)(1)(c).  Lodgment ("lodg.") 1 at 183-85, 188-89, 241-44; Lodg. 2 at 2105-08.[1]  In a bifurcated proceeding, the trial court found Petitioner had suffered prior convictions within the meaning of Cal. Penal Code §§ 667(b)-(i), 667.5(b), and 1170.12(a)-(d).  CT at 207-18, 237-38; 3 RT at 2402-05, 2407, 2408.

---

[1]    The Court's citations to Lodgments refer to the lodged documents filed by Respondent in support of its Answer.  (ECF Docket No. 33).  Lodgment 1 is a copy of the Clerk's Transcript from Petitioner's trial.  Lodgment 2 is a copy of the Reporter's Transcript of Petitioner's trial.  Any further citations to Lodgment 1 will be abbreviated as "CT," and any further citations to Lodgment 2 will be abbreviated as "RT."  All further citations to the two lodgments shall reference the relevant volume number.

On April 27, 2011, the trial court sentenced Petitioner to a prison term of 55 years to life plus two years and four months.  CT at 237-44; 3 RT at 2407-09.

On October 24, 2011, Petitioner filed a direct appeal with the California Court of Appeal.  Lodgs. 3-5.  On June 13, 2012, the California Court of Appeal affirmed the judgment in an unpublished opinion.  Lodg. 6.

On August 7, 2012, Petitioner filed a petition for review with the California Supreme Court.  Lodgs. 7-8.  On September 12, 2012, the California Supreme Court denied the petition without comment.  Lodg. 8.

On November 15, 2012, Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court.  Lodg. 9.  On November 30, 2012, the Superior Court denied the petition in a reasoned order.  Lodg. 10.

On June 3, 2013, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  Lodg. 11.  On July 26, 2013, the Court of Appeal denied the petition on procedural grounds and on the merits.  Lodg. 12.

On September 25, 2013, Petitioner filed a habeas corpus petition in the California Supreme Court.  Lodg. 13.  On January 15, 2014, the California Supreme Court denied the petition without comment.  Lodg. 14.

On May 2, 2014, Petitioner filed a second habeas corpus petition in the California Supreme Court.  Lodg. 15.  On July 9, 2014, the California Supreme Court denied the petition with citations to In re Clark, 5 Cal.4th 750, 767-69 (1993); People v. Duvall, 9 Cal.4th 464, 474 (1995); and In re Swain, 34 Cal.2d 300, 304 (1949).

On November 20, 2013, Petitioner filed a Petition for Writ of Habeas Corpus in this Court.  (ECF Docket No. ("dkt.") 1).  On January 15, 2014, the Petition was stayed and held in abeyance.  (Dkt. 10).  On March 24, 2014, Petitioner filed the instant First Amended Petition ("FAP").  (Dkt. 14).  On January 9, 2015, Respondent filed an Answer to the FAP ("Answer").  (Dkt. 32).  On February 10, 2015, Petitioner filed a Traverse.  (Dkt. 36).

On April 10, 2015, the Court issued a Report and Recommendation that the FAP

be denied because Petitioner's claims are meritless. (Dkt. 37).  On May 7, 2015, Petitioner filed Objections to the Court's Report and Recommendation.[2] (Dkt. 39).

Thus, this matter has been submitted for decision.

## III.

## FACTUAL BACKGROUND

For a summary of the facts, this Court relies on the California Court of Appeal's opinion:[3]

> At about noon on April 25, 2010, Donte Brookins was walking in his neighborhood in the area of 105th Street and McKinley Avenue in Los Angeles.  Brookins was aware that the area was territory claimed by the Front Street Crips.  Brookins was a member of the Avalon Gardens Crips and had visible gang tattoos on his neck, forearms, and hands.  The two gangs were not rivals, and Brookins got along with some Front Street members, although he did not talk to or "hang out" with them.
>
> As Brookins was walking, two men turned onto the street in a grey Nissan Altima.  Defendant was in the passenger seat, which was the side of the vehicle closer to Brookins.  Brookins recognized defendant as someone he had seen around the neighborhood, and although they had no previous interactions, he was not concerned because he did not consider defendant to be an enemy.  Brookins believed defendant was a member of the Back Street Crips, a gang that was not a rival of Brookins's gang but a rival of the Front Street Crips.  The Back Street Crips and the Front Street Crips had a history of violent encounters.

---

[2]   To the extent Petitioner's Objections warrant further clarification, they are addressed in footnotes 5-7, below.

[3]   Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted).  This Court has independently reviewed the trial record and finds the summary accurate.  Petitioner is referred to as "defendant" in the California Court of Appeal's opinion.

4

Brookins continued to walk along 105th Street.  The vehicle stopped and defendant, who Brookins knew as "Chuck," got out holding a gun.  Brookins looked at defendant and yelled "Chuck" five times to let defendant know that he was not a member of the Front Street Crips.  Brookins was unarmed, did not have any animosity towards defendant, and did not threaten him.  Defendant shot at Brookins five times from approximately 15 to 20 feet away, hitting him once in the abdomen.  Defendant reentered the Nissan and left.  Brookins continued to call defendant's name because he was "shocked" and "wanted to talk about it."  The entire incident lasted about 20 seconds.

Los Angeles Police Officer Travis Johnson responded to a call reporting the shooting.  He recovered four .45–caliber shell casings discharged from a semi-automatic weapon at the scene.  A fifth shell casing was not recovered, but was visible in photographs of the scene.  The firearm used in the shooting was not recovered.

Brookins was admitted to the hospital and underwent two surgeries in which his colon and part of his intestines were removed.  While Brookins was in the hospital, Los Angeles Police Officer Timothy Colson showed him a photographic lineup or "six-pack."  Brookins identified defendant as the shooter from the lineup.

Los Angeles Police Officer Samuel Marullo and his partner arrested defendant at his home 10 days after the shooting.  The officers recovered a baseball cap with the letter "B" on it and a T-shirt with writing on it related to the Back Street Crips, along with two cell phones recovered from his person.  Defendant was also wearing a baseball cap with a "B" on it when he was arrested.  Officer Marullo had contact with defendant on "many" prior occasions.  Defendant had previously told Officer Marullo that he was a member of the Back Street Crips.  Officer Marullo knew defendant by the monikers "Chuck" and "Crypto."

5

Officer Colson reviewed the contents of the cell phones and discovered pictures of defendant with Back Street Crips members in which some of the men were "throwing" gang signs and wearing T-shirts with "BSC, 109th Street" written on them.  There were also three incoming text messages recovered from the phones that pictured a handgun and a magazine.  One had the text "11S45HP" underneath the photo of the gun.  Officer Colson testified that "45HP" meant a .45 Hi Point gun.

Brookins and his wife were homeless and living in San Francisco at the time of trial.  They were provided with $30 meal vouchers, lodging, and transportation to Los Angeles so that Brookins could testify at trial.  Brookins testified that his gang would not approve of him testifying at trial because street code prohibited snitching.  He stated the consequences of testifying "vary up to death," and he was taking a big risk that "a lot of harm" would come to him. Brookins left Los Angeles and went to San Francisco after he was shot, but it still was not easy for him to testify against defendant because he did not feel good about it and did not like "putting people in jail."

On cross-examination, Brookins testified that he did not appear at the preliminary hearing on May 7, 2010, because he did not have money to make the trip.  Brookins explained the reason he could not appear to the officer who subpoenaed him and "[w]hoever I talked to.  I constantly told them [that I could not pay for the trip]."  Brookins failed to appear at trial on January 7 and again on January 18 or 19.

Brookins agreed to be interviewed by Bill Moore, an investigator for defendant, on the Friday before he testified at trial.  Brookins recalled telling Moore that he did not know the person who shot him, and that he turned toward the shooter as he was shot but did not recognize him.  Brookins told Moore that he identified defendant in the photographic lineup because his "homeboys" had come to visit him in the hospital and told him that the word on the street was

6

that defendant shot him.  He told Moore that he would not be able to identify defendant in court because he could not identify the person who shot him. Brookins explained that he made the statements to Moore because "in [his] heart he did not want to see this man in jail," and he forgave defendant for what happened.  Brookins said he was trying to get defendant "off the hook."

Moore confirmed that he interviewed Brookins.  Brookins was not nervous or reluctant when they spoke.  There was nothing in Brookins's demeanor that indicated Brookins was being evasive during the interview.

Los Angeles Police Officer Jeffrey Heller testified for the prosecution as an expert on gangs. Reputation and respect are very important to gangs and are attained by acts of violence.  Having a reputation for violence allows gangs to maintain their territories by creating an atmosphere of fear and intimidation. Other gangs will be less likely to interfere with their criminal activities and citizens will be afraid to report them.  Officer Heller explained that a "snitch" is someone who talks openly to the police about criminal activity.  The consequences of being labeled a snitch can range from being beaten up to being killed. Both rival gangs and the snitch's gang may retaliate because it is against the code to snitch.  A person who snitches is considered unreliable by all gangs and cannot be trusted not to tell police about the criminal activity of his own gang.  A gang's territory has significant importance because it gives the gang a base of operation and a place to draw new members.  If a member of a different gang wanders into another gang's territory there can be serious consequences ranging from a beating to death.

Officer Heller testified specifically regarding the Back Street Crips.  The gang goes by "B," "BS," "BSC," or "Back Street" and uses these names in tattoos and for tagging.  They also use a hand sign for the letter "B."  The Back Street Crips and the Front Street Crips are rivals who have had numerous violent encounters. The Back Street Crips' primary activities include robberies,

narcotics sales, burglaries, auto theft, shootings, assaults with deadly weapons, and murder.  Officer Heller had numerous contacts with defendant and knows him to be a member of the Back Street Crips who goes by the monikers "Chuck" and "Crypto."  Defendant has several tattoos that Officer Heller identified as Back Street Crips insignias. He identified gang members in photos taken from defendant's cell phone.

Officer Heller testified that the area where the shooting took place was within the territory of the Front Street Crips.  Given the hypothetical situation in which a Back Street Crip shoots an Avalon Gardens Crip in Front Street Crips' territory, Officer Heller opined that the shooting would have been for the benefit of the Back Street Crips because it is an act of disrespect to shoot someone in broad daylight in a rival gang's territory.  He opined that it was irrelevant whether the person who was shot was a rival gang member because shooting anyone in another gang's territory would be considered an attack on the territory.

Tiffany Shelton, defendant's girlfriend, provided an alibi for defendant at the time Brookins was shot.  Defendant spent the night of April 24, 2010, with Shelton, sleeping in the same bed.  When she got up between 11:00 a.m. and 11:30 a.m. on April 25, defendant was still asleep.  He did not wake up until 12:30 p.m. or 1:00 p.m.  Defendant was in the apartment with Shelton until she had to leave to attend a barbeque at 3:00 p.m.  Shelton found out about defendant's arrest on May 5, 2010, and after learning the date and time of the shooting, she was able to determine that defendant had been at her house at the time of the offense.  Shelton did not go to the police station to report that defendant was with her at the time of the shooting because the police would not have listened to her.  She first made a statement when a defense investigator contacted her a few months later.  She told the investigator the same things that she testified to at trial.  On cross-examination, Shelton stated that she might

8

have woken up as late as 11:30 or 12:00. She was not certain of the exact time she woke up, but she was certain that she did not leave her apartment until 3:00 because she went to a barbeque that day.

Dr. Mitchell Eisen testified as an expert in eyewitness memory and suggestibility for the defense. Dr. Eisen testified that the human memory does not capture detail in the way that a camera would because there are limits on how much information can be taken in at one time. Dr. Eisen explained that there are gaps in memory which people fill in by inference. Once a person has reconstructed an event by filling in any gaps with inferences, those inferences become part of the memory. People will confuse the source of remembered information and believe that something someone described after the event actually occurred during the event if it makes sense. Dr. Eisen testified that as stress increases to a traumatic level, people will tend to focus very intensely on some core experience at that moment. People will vary in what they focus on, but in general, whatever they focus on will limit their ability to focus on other details. People vary greatly in what they can remember following a traumatic experience. Some will experience a total inability to recall, whereas others will be relatively unaffected. Dr. Eisen opined that memory is best right after an incident occurs. Over time, details are lost and post-event information, including statements of others, is incorporated as part of the memory. The longer someone looked at another person's face, the better their memory of it would be. When there is a weapon involved in a traumatic experience, people will tend to focus on the weapon to the exclusion of other details. People vary as to how they react to the sight of a weapon. Some will be unable to process anything else well, but others will be minimally affected. People tend to become more confident in the accuracy of their memories over time. A witness's confidence in their memories is not a good indicator of their accuracy. However, people can and do make accurate identifications all the time. Dr.

Eisen opined that if a witness knows a person before an event involving that person, the witness may be more likely to be able to make a positive identification. Accuracy increases proportionately to how well the witness knows the person. If a witness does not know a person well, he may confuse the context in which he is familiar with the person.

Lodg. 6 at 3-8.

## IV.

## PETITIONER'S CLAIMS FOR RELIEF

Petitioner's claims, as presented in his FAP, are as follows.

1.      Claim One: Petitioner's trial counsel was ineffective for failing to move to suppress evidence resulting from a suggestive identification procedure.

2.      Claim Two: The prosecution did not present sufficient evidence to support the gang allegation.

3.      Claim Three: The trial court erred by allowing the admission of overly prejudicial gang evidence.

4.      Claim Four: The prosecutor committed misconduct by failing to disclose evidence of compensation paid to a prosecution witness, and by presenting the witness's false testimony.

5.      Claim Five: Petitioner's appellate counsel was ineffective for filing a meritless appeal.

6.      Claim Six: The trial court erred by precluding defense counsel from asking a hypothetical question to an expert witness.

7.      Claim Seven: Cumulative error resulted in an unfair trial.

Respondent contends that all of these claims fail on the merits. Answer, at 5-44.[4]

---

   [4]  Respondent further argues Claim Two is procedurally barred in light of the California Court of Appeal's denial of the claim with a citation to In re Lindley, 29 Cal.2d 709, 723 (1947). In the interest of judicial economy, this Court will address Petitioner's claim on the merits rather than perform the procedural default analysis. See Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997)

# V.

## <u>STANDARD OF REVIEW</u>

A federal court may review a habeas petition by a person in custody under a state-court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal habeas relief is not available for state-law errors.  <u>Swarthout v. Cook</u>, 562 U.S. 216, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (per curiam) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law" means federal law that is clearly defined by the holdings of the Supreme Court at the time of the state-court decision.  <u>See, e.g.</u>, <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011).  Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted).

In determining whether a decision is "contrary to" clearly established federal law, a reviewing court must evaluate whether the decision "'applies a rule that contradicts [such] law'" and how the decision "confronts [the] set of facts that were before the state

(holding that federal court may address the merits of a habeas petition without reaching procedural issues in the interest of judicial economy).

court.'" <u>Cullen</u>, 131 S. Ct. at 1399 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405, 408, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  If the state decision "'identifies the correct governing legal principle' in existence at the time," a reviewing court must assess whether the decision "'unreasonably applies that principle to the facts of the prisoner's case.'"  <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 413).  An "unreasonable application" of law is "'different from an incorrect application'" of that law.  <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011) (quoting <u>Williams</u>, 529 U.S. at 410) (emphases omitted).  Similarly, a state-court decision based upon a factual determination may not be overturned on habeas review unless the factual determination is "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'"  <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004)).

The AEDPA standard requires a high level of deference to state-court decisions, such that a state court's decision will be upheld if "fairminded jurists could disagree as to whether it was correct."  <u>Gulbrandson v. Ryan</u>, 738 F.3d 976, 990 (9th Cir. 2013) (citation and internal quotation marks omitted).  Even if this Court finds such a state-court error of clear constitutional magnitude, habeas relief is not available unless the error "had substantial and injurious effect or influence in determining the jury's verdict."  <u>Fry v. Pliler</u>, 551 U.S. 112, 116, 121–22, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (citations and internal quotation marks omitted).

Where, as with respect to Claims One, Two, and Five, the last reasoned state court decision is that of the Los Angeles County Superior Court on habeas review, the Court looks to that opinion in applying AEDPA deference.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); <u>see also</u> <u>Kennedy v. Lockyer</u>, 379 F.3d 1041, 1052 (9th Cir. 2004); <u>Gill v. Ayers</u>, 342 F.3d 911, 917 n.5 (9th Cir. 2003).

Where, as here with respect to Claim Six, the California Supreme Court denies a petitioner's claims without comment, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on these claims, in this

case, the grounds articulated by the California Court of Appeal in its decision on direct review.  See Ylst, 501 U.S. 803-06; Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992); see also Kennedy, 379 F.3d at 1052; Gill, 342 F.3d at 917 n.5.

With respect to Claims Three and Seven, Petitioner raised his claims on habeas corpus review to the California Supreme Court.  Lodgs. 15 at 5, 21-23.  The California Supreme Court did not reach the merits of Petitioner's claims, instead denying them on purely procedural grounds.  Lodg. 16.  Where the state courts did not reach the merits of a habeas claim, "federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.'"  Cone v. Bell, 556 U.S. 449, 472, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009) (quoting 28 U.S.C. § 2254(d)).  Rather than applying deference under § 2254, the federal habeas court must review the claim de novo.  Id. at 472; Scott v. Ryan, 686 F.3d 1130, 1133 (9th Cir. 2012); Pirtle v. Morgan, 313 F.3d 1160, 1167-68 & n.4 (9th Cir. 2002).

Where, as here with respect to Claim Four, the state courts supply no reasoned decision on the claims presented for review, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (citing Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000)).

## VI.

## DISCUSSION

**A.    Petitioner Fails to Demonstrate Ineffective Assistance of Counsel in Claim One**

In Claim One, Petitioner argues his trial counsel was ineffective for failing to move to suppress an unduly suggestive identification.  FAP at 5; Memorandum of Points and Authorities in Support of FAP ("MPA") at 4-8.

### 1.    Background

Los Angeles Police Officer Timothy Colson showed Brookins a photographic

lineup at the hospital.  2 RT at 1024.  Brookins identified Petitioner from the lineup as the man who shot him.  2 RT at 964, 1024.  On cross-examination at Petitioner's trial, Brookins admitted telling Petitioner's investigator he did not recognize the shooter and identified Petitioner from the photographic lineup because some of his "homeboys" told him at the hospital there was a rumor Petitioner was the shooter.  2 RT 980-82.  On redirect, Brookins explained he gave the inconsistent statements to the defense investigator because he had forgiven Petitioner and wanted to help him avoid punishment.  2 RT at 984.

### 2.      State Court Opinion

The Los Angeles County Superior Court denied Petitioner's claim on habeas review, finding Petitioner had failed to satisfy his burden of presenting a prima facie case for relief.  Lodg. 10.

### 3.      Legal Standard

For Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy a two-prong test:  (1) counsel's performance was deficient, and (2) prejudiced resulted from the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if a petitioner cannot sufficiently prove one of them.  Id. at 697; see also Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

To prove deficient performance, a petitioner must show counsel's representation fell below an objective standard of reasonableness.  Strickland. 466 U.S. at 687-88. However, establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment.  Strickland, 466 U.S. at 691; see also Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998).  Thus, a petitioner must also show prejudice, such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

14

Moreover, a habeas court's review of a claim under the <u>Strickland</u> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).   The relevant question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Id.</u> (citations omitted).

### 4.   Analysis

Petitioner cannot show trial counsel was ineffective for failing to move to suppress the identification evidence because any such motion would have lacked merit.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." <u>Perry v. New Hampshire</u>, --- U.S. ----, 132 S. Ct. 716, 718, 181 L. Ed. 2d 694 (2012).  A pretrial identification violates due process where:  (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  <u>Neil v. Biggers</u>, 409 U.S. 188, 197, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); <u>Manson v. Braithwaite</u>, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (due process challenges to identification procedures are reviewed using <u>Biggers</u>' test).

Here, Petitioner argues Brookins's identification of Petitioner is unreliable because Brookins's friends told him Petitioner was the man who shot him.  Petitioner does not argue Brookins's identification was the result of a suggestive *police procedure*.  Because Brookins's identification was not the result of an unduly suggestive police procedure, Petitioner cannot show the identification evidence was improper.  <u>Perry</u>, 132 S. Ct. at 718.  Thus, Petitioner's counsel would have had no basis upon which to move to suppress the identification evidence and counsel was not ineffective for failing to present such a meritless motion.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005).[5]

---

[5]   Petitioner argues in his Objections that Exhibit A to his Traverse supports this claim of ineffective assistance of counsel.  Objections at 3-4.  Exhibit A is a declaration

Accordingly, the state courts' denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, federal law.  Thus, habeas relief is not warranted on Claim One.

**B.     Petitioner Fails to Demonstrate Insufficient Evidence in Claim Two**

In Claim Two, Petitioner argues the prosecution failed to present sufficient evidence to support the jury's true finding with respect to the gang allegation. Specifically, Petitioner argues the evidence was insufficient to support the second element of the gang allegation (i.e., whether Petitioner acted with the specific intent to promote, further, or assist criminal conduct by gang members) because he "did not do any gang signs, say a gang name," and there was no evidence he "committed the crime with another member of his gang or any other gang."  FAP at 5-6; MPA at 9-11.

### 1.     State Court Opinion

As with Claim One, the Los Angeles County Superior Court denied Petitioner's claim on habeas review, finding Petitioner had failed to satisfy his burden of presenting a prima facie case for relief.  Lodg. 10.

### 2.     Legal Standard

The Fourteenth Amendment's Due Process Clause guarantees a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  The Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Under Jackson, "[a]

---

by a defense investigator indicating the investigator was aware of the victim's statement that the shooter was someone he went to school with and that school records indicated Petitioner and the victim did not attend school together.  Traverse at 23.  The declaration also states police placed Petitioner's picture in a six-pack photo-lineup and that the victim picked Petitioner as the shooter.  Id.  However, the declaration does not show police employed any suggestive procedures in securing the victim's identification of Petitioner and, therefore, that counsel was ineffective for failing to object to the allegedly suggestive identification procedures.

petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). The Supreme Court has held "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 318).

When the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. Jackson, 443 U.S. at 326. "Jackson cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution.'" Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 319). Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

The Jackson standard applies to federal habeas claims attacking the sufficiency of the evidence to support a state conviction. Juan H., 408 F.3d at 1274; Chein, 373 F.3d at 983; see also Bruce, 376 F.3d at 957. The federal court must refer to the substantive elements of the criminal offense as defined by state law and look to state law to determine what evidence is necessary to convict on the crime charged. Jackson, 443 U.S. at 324 n.16; Juan H., 408 F.3d at 1275. AEDPA, however, requires the federal court to "apply the standards of Jackson with an additional layer of deference." Juan H., 408 F.3d at 1274. The federal court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application' of Jackson and Winship to the facts of this case." Id. at 1275 & n.13.

### 3.     Analysis

Subdivision (b) of section 186.22 provides for a sentencing enhancement when the defendant is "convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang," when the defendant acts "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Cal. Penal Code § 186.22 (b)(1).

Here, the evidence presented established Petitioner as an admitted gang member who entered rival gang territory and shot with the intent to kill.  2 RT at 952-53, 958, 1008-12.  The prosecution's gang expert testified such acts would benefit Petitioner's gang by showing disrespect to the rival gang and enhancing the reputation of the shooter's gang.  2 RT at 1056-58.  Such evidence, without more, was sufficient to support the jury's finding Petitioner had the specific intent to promote, further, or assist criminal conduct by gang members.  See People v. Albillar, 51 Cal.4th 47, 63, 66-68 (2010).  The fact that Petitioner may have acted alone in shooting Brookins is of no consequence.  See People v. Rodriguez, 55 Cal.4th 1125, 1138-39 (2012) (a lone perpetrator may be subjected to the state's gang enhancement under Penal Code section 186.22(b)(1)); see also People v. Rios, 222 Cal.App.4th 542, 572 (2013) (same).

Accordingly, the state courts' denial of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, federal law.  Thus, habeas relief is not warranted on Claim Two.

## C.     Petitioner Fails to Demonstrate Evidentiary Error in Claim Three

In Claim Three, Petitioner argues the trial court erred by allowing the admission of overly prejudicial gang evidence.  Specifically, Petitioner argues gang evidence should not have been admitted because "this was not a gang case."  FAP at 6; MPA at 12-14.

Because the state courts did not address Petitioner's claim on the merits, denying it instead on purely procedural grounds, this Court must review Petitioner's claim de novo. Cone v. Bell, 556 U.S. 449, 472, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009) (quoting 28 U.S.C. § 2254(d)); Scott v. Ryan, 686 F.3d 1130, 1133 (9th Cir. 2012); Pirtle v. Morgan,

1    313 F.3d 1160, 1167-68 & n.4 (9th Cir. 2002).

2        **1.    Legal Standard**

3        The federal due process inquiry regarding the admission of allegedly prejudicial

4    evidence is "whether the admission of the evidence so fatally infected the proceedings as

5    to render them fundamentally unfair." Kealohapauole v. Shimoda, 800 F.2d 1463, 1465

6    (9th Cir. 1986).  "Only if there are *no* permissible inferences the jury may draw from the

7    evidence can its admission violate due process.  Even then, the evidence must 'be of such

8    quality as necessarily prevents a fair trial.'" Jammal v. Van de Kamp, 926 F.2d 918, 920

9    (9th Cir. 1991) (quoting Kealohapauole, 800 F.2d at 1465, 1466).

10       **2.    Analysis**

11       Here, Petitioner merely offers his own self-serving conclusion that "this was not a

12   gang case."  However, Petitioner was charged with committing the attempted murder for

13   the benefit of a street gang within the meaning of California Penal Code section

14   186.22(b)(1)(c).  Moreover, as explained in Section VI.B, above, the gang enhancement

15   was supported by substantial evidence.  Thus, gang evidence was directly relevant to the

16   charges against Petitioner and offered the permissible inference that Petitioner committed

17   the crime for the benefit of his gang with the intent to promote, further, or assist criminal

18   activity by his gang.[6]

19       Accordingly, habeas relief is not warranted on Claim Three.

20   _____

21   [6]   In his Objections, Petitioner again cites to Exhibit A of his Traverse as support for
     this claim.  Objections at 7-8.  According to Petitioner, the exhibit impeaches the victim's

22   identification of Petitioner as the shooter because it shows the victim claimed the shooter
     went to school with him. Id.  However, the exhibit is not relevant to the issue of whether

23   the trial court erred in admitting prejudicial gang evidence.  To the extent Petitioner

24   argues the exhibit calls into question the evidence of his guilt, as the Court has detailed in
     Section VI.B, Petitioner's Objection is meritless.  On habeas review, this Court may not

25   reweigh the evidence and make different credibility determinations.  See Cavazos v.

26   Smith, --- U.S. ----, ----, 132 S. Ct. 2, 7 n.*, 181 L. Ed. 2d 311 (2011) (reweighing facts
     precluded by Jackson); see Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed.

27   2d 808 (1995) ("[T]he assessment of the credibility of witnesses is generally beyond the

28   scope of review.").

**D.     Petitioner Fails to Demonstrate Prosecutorial Misconduct in Claim Four**

In Claim Four, Petitioner argues the prosecutor committed misconduct by failing to disclose Brookins had been compensated for his testimony, and for presenting Brookins's false testimony.  FAP at 6; MPA at 14-16.

### 1.     Petitioner Has Not Demonstrated Prosecutorial Misconduct in Failing to Disclose Exculpatory Evidence

Petitioner claims the prosecutor failed to disclose evidence that Brookins was compensated for his testimony.

"In Brady [v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], the Supreme Court held '[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (quoting Brady, 373 U.S. at 87).  "The elements of a claim for a Brady violation are that '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  Gonzalez v. Wong, 667 F.3d 965, 981 (9th Cir. 2011), cert. denied, 133 S. Ct. 155 (2012) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

Here, the evidence at issue was not suppressed by the prosecution.  In fact, Brookins truthfully testified at trial he was not "paid any money or given [] some kind of benefit *in exchange*" for testifying, but conceded having his expenses (i.e. lodging, travel expenses and meal vouchers) paid while attending trial.  2 RT at 973 (emphasis added). Significantly, Petitioner was then able to cross-examine Brookins regarding the payments he received.  Petitioner's counsel did not suggest the disclosure of payments was untimely, nor did he suggest he needed more time to investigate the payments to Brookins before proceeding with trial.  Hence, Petitioner has not shown the prosecution withheld any evidence related to compensation paid to Brookins.

### 2.   Petitioner Has Not Demonstrated Prosecutorial Misconduct in Presenting False Testimony

Petitioner further claims the prosecutor committed misconduct by admitting Brookins's allegedly false testimony.  Specifically, Petitioner argues the prosecutor allowed Brookins to change his story about having gone to school with Petitioner after learning Brookins and Petitioner were too far apart in age to have attended school at the same time.  MPA at 15.[7]

At Petitioner's preliminary hearing, Los Angeles Police Officer Timothy Colson testified that Brookins claimed to have known Petitioner before the shooting.  According to Officer Colson, Brookins told him "he grew up with [Petitioner].  They all went to school together.  They drank together.  They fought together.  They grew up together."  CT at 16.  At trial, Brookins offered the following explanation for how he knew Petitioner:

> Q   Prior to April 25th, 2010, Mr. Brookins, had you ever known or met [Petitioner]?
>
> A   I seen him around.
>
> Q   Okay.  Where?
>
> A   In the streets.
>
> Q   When you say around in the streets, do you mean you would see him hanging out somewhere?  Did you ever interact with him, like you said --
>
> A   No.  I never interacted with him.
>
> . . .
>
> Q   . . . You said you had seen him around and you were referring to an individual you just pointed out, the defendant.  Where had you seen him, Sir?

---

[7]   In his Objections, Petitioner faults the Court for addressing this claim despite Petitioner's abandonment of the claim, as noted in his Traverse.  Objections at 9. However, because this claim is easily disposed of on the merits, the Court opted to address the claim out of an abundance of caution and in the interest of completeness.

1          A   In the streets.  The streets.

2          Q   Do you recall which streets?

3          A   Never.  No.  Had a conversation or it was see -- you know like how

4     you see somebody driving by just in the streets.

5     2 RT at 955-56.

6          A prosecutor's knowing use of false testimony to get a conviction violates due

7     process.  Napue v. People of State of Ill., 360 U.S. 264, 889 (1959).  To prevail on a due

8     process claim based on the knowing presentation of false evidence, a petitioner must

9     show "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or

10    should have known that the testimony was actually false, and (3) . . . the false testimony

11    was material."  Towery v. Schriro, 641 F.3d 300, 308 (9th Cir. 2010), cert. denied, 132 S.

12    Ct. 159, 181 L. Ed. 2d 74 (2011).  However, mere inconsistencies in the evidence do not

13    constitute the knowing use of false testimony by the prosecution, as it is "within the

14    province of the jury to resolve the disputed testimony."  United States v. Geston, 299

15    F.3d 1130, 1135 (9th Cir. 2002); United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th

16    Cir. 1995).  Evidence is material if there is a reasonable likelihood that the false evidence

17    or testimony could have impacted the jury's verdict.  United States v. Agurs, 427 U.S. 97,

18    103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

19        First, Petitioner fails to establish the testimony was false.  The statements attributed

20    to Brookins by Officer Colson are not inherently inconsistent with Brookins's trial

21    testimony.  The statements testified to by Officer Colson suggest Brookins and Petitioner

22    grew up in the same neighborhood, socialized with the same people, and attended the

23    same schools.  Nothing about this statement contradicts Brookins's trial testimony that he

24    knew who Petitioner was from the neighborhood, but had not personally interacted with

25    him.

26        Moreover, even if the Court were to conclude these statements were false,

27    Petitioner has not shown the prosecutor knew either statement to be false or that such

28    testimony on a minor, background issue was material.

22

1    Accordingly, the state courts' denial of Petitioner's prosecutorial misconduct
2 claims was not contrary to, or an unreasonable application of, federal law.  Thus, habeas
3 relief is not warranted on Claim Four.

4 **E.    Petitioner Fails to Demonstrate Ineffective Assistance of Appellate Counsel in**
5    **Claim Five**

6    In Claim Five, Petitioner argues his appellate counsel was ineffective for filing an
7 appellate brief with a single, unmeritorious claim rather than presenting the claims for
8 relief Petitioner now presents to this Court.  Petitioner argues counsel should have
9 presented the claims of a suggestive identification procedure and insufficient evidence to
10 support the gang enhancement on appeal .  FAP at 6; MPA at 17.

11    **1.    State Court Opinion**
12    The Los Angeles County Superior Court denied Petitioner's claim as frivolous
13 and/or lacking factual support.  Lodg. 10.

14    **2.    Legal Standard**
15    The <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate
16 counsel based on the failure of counsel to raise particular claims on appeal.  <u>Smith v.</u>
17 <u>Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).  A habeas
18 petitioner must show that, but for appellate counsel's failure to raise the omitted claim(s),
19 there is a reasonable probability that the petitioner would have prevailed on appeal.  In
20 the absence of such a showing, neither <u>Strickland</u> prong is satisfied.  <u>See</u> <u>Pollard v.</u>
21 <u>White</u>, 119 F.3d 1430, 1435-37 (9th Cir. 1997); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434-
22 35 (9th Cir. 1989).

23    Appellate counsel does not have a constitutional duty to raise every non-frivolous
24 issue requested by a defendant.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S. Ct. 3308, 77
25 L. Ed. 2d 987 (1983).  Counsel "must be allowed to decide what issues are to be pressed."
26 <u>Id.</u>  The weeding out of weaker issues is widely recognized as one of the hallmarks of
27 effective appellate advocacy, and counsel is not deficient for failing to raise a weak issue.
28 <u>Miller</u>, 882 F.2d at 1434.  There is, of course, no obligation to raise meritless arguments

on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).

### 3.    Analysis

As the Court has explained in Sections VI.A-D and F, herein, the claims Petitioner suggests appellate counsel should have raised on appeal in the state courts, lack merit. Petitioner cannot show that appellate counsel was ineffective for failing to raise these meritless claims on appeal.

Accordingly, the state courts' denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, federal law.  Thus, habeas relief is not warranted on Claim Five.

## F.    Petitioner Fails to Demonstrate Trial Court Error in Claim Six

In Claim Six, Petitioner argues the trial court erred by refusing to allow Petitioner's counsel to ask a hypothetical question of the defense eyewitness identification expert, Dr. Mitchell Eisen, Ph.D.  Petition at 6B.

As the California Court of Appeal accurately explained in great detail on direct review, Petitioner's counsel attempted to ask questions of Dr. Eisen based on hypothetical scenarios.  The trial court sustained objections based on a finding that the facts detailed in the hypotheticals were inaccurate and did not comply with the Rules of Evidence.  Lodg. 6 at 13-15.  The Court of Appeal ultimately denied Petitioner's claim on appeal, finding the trial court properly excluded the hypothetical questions because they omitted or misstated important facts.  The state court further found the information counsel was attempting to elicit through the hypothetical questions was addressed in later questioning.  Lodg. 6 at 13-15.

The United States Supreme Court has not squarely addressed whether a trial court's discretionary exclusion of evidence pursuant to an otherwise valid evidentiary rule can violate a defendant's constitutional rights, nor has it set forth standards for assessing such discretionary decisions.  Moses, 555 F.3d at 758-59.  Of course, a state court's decision cannot be contrary to, or an unreasonable application of, clearly

established federal law, if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court.  See Carey v. Musladin, 549 U.S. 70, 77, 127 S. CT. 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law); see also Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).  For these reasons, the Ninth Circuit has held that a claim challenging a trial court's exercise of discretion to exclude expert witness testimony does not warrant federal habeas corpus relief.  Moses, 555 F.3d at 759 (rejecting claim that trial court's exercise of discretion to exclude expert testimony violated constitutional right to present defense).

Accordingly, the state courts' denial of Petitioner's trial court error claim was not contrary to, or an unreasonable application of, federal law.  Thus, habeas relief is not warranted on Claim Six.

**G.    Petitioner Fails to Demonstrate Cumulative Error in Claim Seven**

Finally, in Claim Seven, Petitioner argues the cumulative impact of each of the alleged errors rendered his trial fundamentally unfair.  FAP at 6B; MPA at 25-26.

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."  Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002), as amended June 11, 2002 (quoting United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996)) (internal quotation marks omitted).  However, where no error lies with each alleged claim taken separately, there is also no cumulative error.  See Mancuso, 292 F.3d at 957 ("Because there is no single constitutional error in this case, there is nothing to accumulate to a level of a constitutional violation.").  Similarly, where no prejudice lies with each alleged claim taken separately, there also rest no cumulative prejudice. Thompson v. Calderon, 109 F.3d 1358, 1369 (9th Cir. 1997), as amended Mar. 6, 1997, rev'd on other grounds, 523 U.S. 538, 566, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998)

1 ("Finding no prejudice from the errors taken separately, we also find no cumulative

2 prejudice."); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996) (same).

3      Here, this Court finds none of the alleged errors individually constituted

4 error or prejudiced Petitioner.  Accordingly, the Court finds Petitioner did not

5 suffer any cumulative error that deprived him of due process.

6      Thus, Petitioner's seventh and final claim does not merit federal habeas relief.

7 <center>**VII.**</center>

8 <center>**<u>RECOMMENDATION</u>**</center>

9      For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an

10 Order (1) accepting this Final Report and Recommendation; (2) denying the First

11 Amended Petition; and (3) dismissing this action with prejudice.

12

13

14 DATED: May 29, 2015                                  

15                         HON. KENLY KIYA KATO
                        United States Magistrate Judge